THE GREATER PEORIA SANITARY AND SEWAGE DISPOSAL DISTRICT, Plaintiff-Appellee and Cross-Appellant, v. JAMES P. KELLSTEDT, Plaintiff-Appellant and Cross-Appellee.

Third District No. 3—83—0815

Opinion filed January 8, 1985.—Rehearing denied February 8, 1985.

James P. Kellstedt, of Peoria Heights, for appellant *pro se.*

Tim Swain, of Swain, Johnson & Gard of Peoria, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

On December 5, 1983, the circuit court of Peoria County entered judgment in favor of plaintiff, Greater Peoria Sanitary and Sewage Disposal District (Sanitary District), and against defendant, James Kellstedt, for unpaid sewage charges of $205.56, costs of $29.20, recording fee of $20 and attorney fees of $645. No court reporter was present at trial, and, therefore, the record of the proceedings is brief and was stipulated to by both parties. The record also contains several exhibits including correspondence between the parties and a billing record for Kellstedt's account. The unpaid charges were accrued during a period from May 1978 through December 1980. The billing record also indicates that there were numerous adjustments made to Kellstedt's account during this period.

Two basic issues are raised by defendant on appeal. First, he argues that the use of water consumption as measured by the water company's meter to determine waste water output from the Kellstedt residence was an unconstitutional application of Peoria Ordinance 301 and, therefore, deprived him equal protection and due process. The second issue raised is whether the award of attorney fees (as provided by statute and by ordinance 301) was (1) special legislation and, therefore, prohibited by the Illinois Constitution, and (2) even if constitutional under the circumstances of this case, the fee award was unreasonable. We reverse both as to the award for unpaid user fees and as to the award for attorney fees.

This court has previously upheld the constitutionality of Ordinance 301 (adopted pursuant to section 7 of the Sanitary District Revenue Bond Act (Ill. Rev. Stat. 1977, ch. 42, par. 319.7)) in *Board of Education v. Greater Peoria Sanitary & Sewage Disposal District* (1980), 80 Ill. App. 3d 1101, 400 N.E.2d 654. However, we did not consider the issues raised here in the *Board of Education* case. Kellstedt's basic argument is that ordinance 301 is unconstitutional as applied to

him. The ordinance sets rates based upon water consumption and provides for a credit for water used but not discharged into the Sanitary District's sewers in section 206 of the ordinance. Section 206 provides for separate metering to measure discharge (section 206.1) and for an allowance for lawn sprinkling at single and two-family residences (section 206.2). Section 206—2 reads in pertinent part:

> "206.2.1 By reducing the metered water consumption by an amount equal to 10%"

Kellstedt argues that this credit discriminates against users who, like himself, refuse to purchase meters at their own expense and whose outdoor water usage is substantially in excess of the 10% allowance under section 206.2.1. The result in this case is that the credit for lawn sprinkling is wholly inadequate, because Kellstedt uses 75% of his water during the summer months to fill his swimming pool and to water his lawns, gardens and golf green. Therefore, 75% of his water consumption is not discharged into the sewers of the Sanitary District, and his user fees are disproportionately higher than other users who use less water outdoors.

The Sanitary District argues that calculating discharge by use of the water company's meters is a common practice statewide and was approved by the appellate court in *McDonald Mobile Homes, Inc. v. Village of Swansea* (1977), 56 Ill. App. 3d 759, 371 N.E.2d 1155. However, unlike the village of Swansea, the Greater Peoria Sanitary District has acknowledged that water consumption and sewer discharge are not necessarily proportional by providing for the credits in section 206. Therefore, while the underlying method of ratemaking is arguably not arbitrary, the credit is arbitrary as applied if it produces a substantial disparity in charges to residential users.

The remaining question then is whether the discriminatory effect of the lawn-watering credit provision violates either constitutional due process or equal protection. Constitutional equal protection protects against a governmental classification scheme which discriminates against certain members of the public. However, as the Sanitary District points out, not all classification schemes are violative of equal protection. In this case the classification scheme does not involve a suspect class, nor does it deprive Kellstedt of a fundamental right. Therefore, there is no equal protection violation.

■■ However, in *Austin View Civic Association v. City of Palos Heights* (1980), 85 Ill. App. 3d 89, 405 N.E.2d 1256, the appellate court found a rate scheme invalid as violative of a common law right of a consumer to be protected from exorbitant rates and unjust discrimination. As the court pointed out in *Austin*, a city operating a

utility is in the same position as a private utility and is precluded from unjust discrimination in ratemaking. The test applied by the appellate court in *Austin* was whether the difference in rates was reasonably related to the difference in the cost of providing service. (85 Ill. App. 3d 89, 98-99, 405 N.E.2d 1256, 1265.) Therefore, the common law right, unlike the constitutional right, which protects against discriminatory governmental action, does not require that the consumer be a member of a suspect class. In this case, the difference in the rates charged to consumers using substantially in excess of 10% of the water consumed for outdoor purposes and consumers using 10% or less of the water consumed out of doors is substantial and is not reflected in the increased cost of service to the user charged the greater amount.

■ Ample evidence exists in the record to determine that Kellstedt used as much as 75% more water during the summer months in the two-year period when these unpaid user charges were incurred. One need only look to the billing record introduced into evidence by the Sanitary District to support Kellstedt's contention. The ordinance must provide a method to allow substantial outdoor water consumers to further reduce their sewer charges upon proof that a substantial amount of their water consumption is not discharged into the Sanitary District sewers. We, therefore, hold that the ordinance is invalid to the extent that it fails to permit a credit for substantial nonsanitary services.

■ The other issue raised by Kellstedt concerns both the constitutionality of the attorney fee provision and the reasonableness of the actual award. The Sanitary District has cross-appealed the award of fees asking that the award be increased to $3,000 to cover all attorney fees incurred in this litigation. Because we find that no award of fees was proper under these circumstances, we do not reach the constitutional claim made by Kellstedt. Section 7 of the statute provides:

> "The sanitary district also has the power, from time to time, to sue the occupant or user of that real estate in a civil action to recover money due for sewerage services, plus a reasonable attorney's fee, to be fixed by the court." (Ill. Rev. Stat. 1983, ch. 42, par. 319.7.)

Ordinance 301 contains a similar provision. We find that these provisions apply only to the collection of moneys due the Sanitary District. When there is a genuine dispute as to the amount due the district, it is unreasonable to allow any attorney fees to be levied against the consumer. To hold otherwise would be to penalize a consumer who disputes the user charges assessed against him and would risk a viola-

tion of the consumer's due process rights, especially in a case such as this where the consumer's argument has not only merit but has prevailed.

We, therefore, reverse the judgment of the circuit court of Peoria County for sanitary sewer services and attorney fees and remand with instructions to vacate the award of attorney fees and for proceedings to determine the proper credit for the period in question consistent with the views expressed in this opinion.

Reversed and remanded with instructions.

HEIPLE and BARRY, JJ., concur.